IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **EGYPT DEPARTMENT OF DEFENSE**<br>2590 L Street, N.W.<br>Washington, D.C. 20037<br>      **Plaintiff,**<br><br>v.<br><br>**MAHMOUD ALBOGHDADY**<br>340 Mill Street, N.E.<br>Suite E<br>Vienna, VA 22180<br><br>and<br><br>**JOUD LLC A/K/A JOUD RESIDENCE**<br>1005 26th Street, N.W.<br>Washington, D.C. 20037<br>Serve:<br>R/A MAHMOUD ALBOGHDADY<br>1005 26th Street, N.W.<br>Washington, D.C. 20037<br>      **Defendants.** | CASE NO.: 21-1144 |

### **COMPLAINT**
(Civil Ejectment from Real Property)

Plaintiff, Egypt Department of Defense, by and through its undersigned counsel, for its Complaint against Mahmoud Alboghdady and Joud LLC a/k/a Joud Residence, hereby makes its claim for civil ejectment pursuant to D.C. Code § 16-1124 and alleges as follows:

### **PARTIES**

1. Plaintiff Egypt Department of Defense is a department of the government of the Arab Republic of Egypt, which is represented in Washington, D.C. through the Embassy of the

Arab Republic of Egypt Office of the Defense, Military, Naval, and Air Attaché, 2590 L Street, N.W., Washington, D.C. 20037 (hereinafter the "EDO").

2. Defendant Mahmoud Alboghdady (hereinafter "Defendant" or "Alboghdady") is an adult individual domiciled in the Commonwealth of Virginia, who on information and belief, resides at 340 Mill Street, N.E., Suite E, Vienna, VA 22180.

3. Defendant Joud LLC a/k/a Joud Residence (hereinafter "Defendant" or "Joud") is a business entity incorporated in and with its principal place of business in the District of Columbia.

## JURISDICTION

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as the Parties are diverse, Plaintiff is a foreign state pursuant to 28 U.S.C. § 1603, and this dispute involves an amount in controversy exceeding $75,000.

5. This Court has personal jurisdiction over Defendant Alboghdady and Defendant Joud due to their occupancy of the real property located at 1005 26th Street, N.W. Washington, DC 20037. Venue is proper under 28 U.S.C. § 1391 because the property which is the subject of the litigation resides within the District of Columbia.

## FACTUAL ALLEGATIONS

**A.   Relevant Background**

6. On or about July 8, 2014, Plaintiff and Defendant Alboghdady entered into a contract (hereinafter "the Lease Agreement") for Defendant Alboghdady to Lease Plaintiff's property located at 2590 L Street, N.W., Washington, D.C. 20037 (Building "B"). The District of Columbia Government later changed the address for Building B, which is now recorded as 1005 26th Street, N.W. Washington, DC 20037 (hereinafter "the Premises").

7. The Lease Agreement is for a period of seven years extending from September 1, 2014 through August 31, 2021. *See* Lease Agreement at § 1 attached hereto as **Exhibit 1**.

8. Plaintiff is the recorded owner of the Premises.

9. The Lease Agreement authorizes Defendant Alboghdady to operate the property as a hotel.

10. Defendant Alboghdady incorporated Defendant Joud LLC in the District of Columbia on August 27, 2014 to operate the hotel on the Premises.

11. Joud's official business address is listed at the Premises according to the corporate information recorded with the District of Columbia Department of Assessment and Taxation.

12. The Lease Agreement between Plaintiff and Defendant Alboghdady requires him to pay monthly rent for the Premises in the amount of $45,000.00 for each of the first three years of his rental, $46,350.00 per month in year four, $47,740.50 per month in year five, $49,172.75 per month in year six, and $50,648.00 per month in year seven. *See* Lease Agreement. at § 3.1(a).

13. The rent is due on the first of each month. *Id*. at § 3.1(c). Any rent that is not paid within five days following its due date, meaning by the 6th of each month, incurs a ten percent late fee. *Id*. at § 3.8.

14. Plaintiff has complied with all terms of the Lease Agreement.

**B.  The Unpaid Rents**

15. Defendant Alboghdady is in breach of the Lease Agreement because he has not paid his rent for the property for any month since February 2020.

16. Defendant Alboghdady's failure to pay rent for a period of more than six months renders his and Defendant Joud's continued possession of Plaintiff's Premises wrongful and justifies civil ejectment.

17. Defendants' continued occupancy and operation of the Premises as a hotel during this extended period in which they have paid no rent to Plaintiff represents a wrongful exercise of ownership rights over the Premises.

18. Defendants wrongfully retain possession of the Premises and withhold it from Plaintiff.

19. Pursuant to D.C. Code § 16-1124, Plaintiff is entitled to the civil ejectment of Defendants to recover the Premises.

20. Pursuant to D.C. Code § 16-1109, Plaintiff is entitled to the mesne profits received by the Defendants from the Premises or for the clear value and use of the property sued for, as well as damages for waste or injury that has occurred to the Premises.

21. The clear value and use of the property is best represented by the Lease Agreement through which the Parties previously agreed upon an appropriate value for Defendants' occupancy and use of the Premises with all the terms which that entailed.

22. Defendant Alboghdady's unpaid rent from March 2020 through April 2021 totals $700,220.50, which will continue to accrue in each month during which Defendants deprive Plaintiff its right to the Premises.

23. The valuation of the Premises in the Lease Agreement included an agreed upon 10% fee for any overdue payments.

24. Defendant Alboghdady has never paid his rent on time during his rental of the Premises, but the situation became steadily more untenable. In or around January 2020, Defendant ceased entirely to make rent payments. Although he later paid rent for January, he did so

more than 6 months after it was due. Defendant's rent for February 2020 was not paid until December 2020. No payments have been received since.

25. Defendant Alboghdady has failed and refused to pay rent despite EDO's demand.

**C.     The Late Fees**

26. Defendant Alboghdady had a long history of late payments even before he ceased making rent payments altogether. Although he paid his contractual ten percent late payment fee for the months of December 2014, September 2017, November 2017, and February 2018, he failed to do so for many other months, which puts him in further breach of the Lease Agreement.

27. The Lease Agreement entitles the EDO to accept partial payments or late payments that do not include the required late fees without surrendering its right to recover the full balance owed and pursue any remedies under the Lease Agreement or under the law. *See*, Lease Agreement at § 3.4.

28. Defendant Alboghdady's overdue late fees for his rent include (i) 32 months at the year 1 to year 3 rent price, totaling $144,000, (ii) 9 months at the year 4 rent price, totaling $41,715.00, (iii) twelve months at the year 5 rent price, totaling $57,288.60, (iv) twelve months at the year 6 rent price, totaling $59,007.24 and (v) 8 months and counting at the year seven price, currently totaling $40,518.40.

29. Overall Defendant Alboghdady's overdue late fees total $342,529.24, which should be incorporated into determining the fair value of the property which Defendants' have denied Plaintiff.

30. Combining the unpaid rent and overdue late fees, Defendants' unlawful occupation of the Premises has deprived Plaintiff, through the date of filing, of $1,042,749.74 in fair value for its property.

31. Although the District of Columbia state of emergency related to COVID-19 included a so-called moratorium on the collection of late fees which would take effect with rental payments due for April 2020 through the end of the state of emergency, Plaintiff reserves all rights to challenge the validity or enforceability of that action.  Plaintiff also contends that any late fees exception applicable during the state of emergency does not prevent this amount from being factored into the agreed-upon value of the property for purposes of establishing the fair use value of the Premises during the period of Defendants' possession adverse to Plaintiff's rightful property interest.

32. For the purposes of calculating any damages for Defendant Alboghdady's breach of contract and arrears due at the termination of his tenancy under D.C. Code § 16-1110, his rent and late fees, excluding fees arguably precluded under the District's moratorium, total $977,644.99.

**D.  Attempted Good Faith Resolution**

33. Plaintiff has made numerous good faith efforts to resolve this matter with Defendant Alboghdady to recoup his overdue money and/or negotiate the return of the Premises, but to no avail.

34. Most recently on March 31, 2021, Plaintiff offered Defendant Alboghdady, via his legal counsel, a tenant payment plan pursuant to D.C. Code § 42-3192.01 to resolve this matter.

35. Plaintiff received no response to his attempt to resolve this dispute and provide Defendant Alboghdady with rent relief.

36. Defendants have continued operating the Premises as a hotel and generating revenue during the period of their delinquent occupancy.

37. Defendants have left Plaintiff with no reasonable recourse but to seek their ejectment from the Premises as is its right under D.C. law.

E. **The Security Deposit**

38. On or about July 8, 2014 and pursuant to the Lease Agreement, Defendant Alboghdady furnished the EDO with a security deposit in the amount of $180,000. Lease Agreement at § 4.

39. The Lease Agreement entitles Plaintiff at its discretion to use the security deposit to offset any overdue rent owed by Defendant Alboghdady when he is in default with regard to any provision governing payment of rent. Id.

40. On March 30, 2021, Plaintiff invoked Article 4 of the Lease Agreement to offset the security deposit against part of Defendant Alboghdady's overdue rent and late fees.

41. Plaintiff served Defendant Alboghdady, via his legal representative, with notice of the use of the security deposit to offset his overdue rent for the month of March 2020 ($49,172.75), as well as to his oldest outstanding late fees accounting through May 2017 and $327.25 of the June 2017 late fee.

42. This offset thereby reduced the overall amount owed for past due rent and late fees not affected by the District's moratorium to $797,644.99.

43. This amount clearly was insufficient to distrain for the satisfaction of the rent in arrears and unpaid as described by D.C. Code § 16-1124(a).

44. The Lease Agreement also requires Defendant Alboghdady to replenish the security deposit to its full amount, $180,000, within five days upon notice from Plaintiff. Lease Agreement at § 4.

45. To date, Defendant Alboghdady has failed to replenish the security deposit and is in breach of this term of the Lease Agreement.

**F.    Condition of the Premises**

46. The Lease Agreement requires Defendant Alboghdady to keep the Premises in good repair throughout the period of rental. *See*, Lease Agreement at § 12(a). The Lease Agreement also requires Defendant Alboghdady, at Plaintiff's discretion, to restore the Premises to its original condition when he leaves, including any alterations he made to the Premises. *Id*. at § 7. Lastly, the Lease Agreement requires Defendant Alboghdady to surrender the Premises in good and clean condition upon expiration or termination of the lease. *Id*. at § 10.

47. D.C. Code § 16-1110 also requires Defendants to compensate Plaintiff for any damages for waste or injury to the Premises or furniture during Defendants' occupancy.

48. Plaintiff supplied Defendants with the full assortment of furniture they then used to operate the hotel at the Premises.

49. The EDO is informed and believes that the Premises are currently in a state of disrepair. If it compelled Defendant Alboghdady to vacate the property at this time for his ongoing breach of contract, there would be significant cleaning, maintenance, and repair work necessary to return the Premises to any semblance of its original condition.

50. Based on Defendant Alboghdady's breach of other material terms of the Lease Agreement, Plaintiff does not anticipate that Defendants will cure these defects prior to

vacating the Premises or comply with these terms of the Lease Agreement and reserves all rights in this regard.

51. Plaintiff intends to seek any and all such additional damages in an amount equal to any necessary cleaning, maintenance, and other restoration work.

**G.   Insuring the Premises**

52. The Lease Agreement requires Defendant Alboghdady to maintain various types of insurance on the Premises throughout the course of the tenancy, including Comprehensive Public Liability and Property Damage Insurance in a minimum amount of $1,000,000; Worker's Compensation Insurance in a minimum amount of $500,000; and Business Interruption Insurance in a minimum amount of the Base Annual Rental amount for at least twelve months ($607,775.00).  Lease Agreement § 3.1.

53. Defendant Alboghdady is required to include Plaintiff as an additional insured on his insurance policies.  Id.

54. To date Defendant Alboghdady has not provided Plaintiff with proof of insurance coverage despite Plaintiff's requests for same, which in itself is a breach of the Lease Agreement. Plaintiff suspects that Defendant Alboghdady is also in breach by failing to carry the required insurance, thereby putting Plaintiff at significant risk of exposure for any potential claim during the course of the Lease.

55. If Defendant Alboghdady cannot demonstrate that the Property has been covered under the appropriate insurance policies throughout the course of the Lease, then he should be held in breach of this contractual term and subject to appropriate damages for the cost of maintaining said insurance policies and the value of any claims for the Parties that would have been otherwise covered by these policies.

56. Defendant Alboghdady's breach of contract significantly predates the COVID-19 pandemic and he continues to operate the Premises as a hotel to this day, receiving regular revenues from these operations.

57. Any claimed impediment to Defendant Alboghdady's ability to perform his contractual obligations under the Lease Agreement as a result of the COVID-19 pandemic should have been protected by him through the Business Interruption Insurance the Lease Agreement requires. This insurance is also designed to protect the EDO by requiring that Defendant Alboghdady list the EDO as an additional insured on his policy.

58. Any failure by Defendant Alboghdady to secure the required insurance or to submit a timely claim for any supposed hindrance to his business is prejudicial to the EDO and the EDO is entitled to damages for Defendant Alboghdady's breach.

**H.** **Additional Damages for Defendants' Occupancy**

59. D.C. Code § 16-1110(3) provides for Plaintiff to be awarded double rent from the termination of the tenancy through to the verdict for possession.

60. Defendant Alboghdady's failure to pay rent materially breached the Lease Agreement, thereby terminating his tenancy.

61. In accordance with D.C. Code § 16-1110(3), when Defendants continued occupying the Premises after being in arrears on rental payments for six months, they became subject to double the agreed upon rent for every month thereafter until the Court issues a verdict for possession or they vacate the Premises.

62. Consequently, Defendants are responsible for double rent from October 2020 to the present and continuing, because Defendant Alboghdady's last monthly payment was for February 2020.

63. The Lease Agreement entitles Plaintiff to any attorney's fees, expenses, or other costs associated with collecting past due rent. Lease Agreement § 19.

64. D.C. Code § 16-1124(b)(c) further establishes that Plaintiff is entitled to all attorney's fees, expenses, or other costs associated with this action.

65. Plaintiff reserves all further rights afforded under the Lease Agreement or the law.

## COUNT I – CIVIL EJECTMENT
### (Mahmoud Alboghdady & Joud LLC)

66. Plaintiff re-states and re-alleges the foregoing paragraphs as though fully set forth herein.

67. Plaintiff, the owner of the Premises, and Defendant Alboghdady entered into a valid and legally enforceable contract, the Lease Agreement, pursuant to which Plaintiff agreed to lease the Premises to Defendant Alboghdady for seven years at an agreed upon monthly rent that increased over time.

68. Pursuant to the Lease Agreement, Plaintiff provided the Premises for Defendants' sole use and enjoyment and upheld all of its contractual obligations.

69. Defendant Alboghdady ceased making rental payments for the Premises and has been in arrears for more than six months from March 2020 through at least April 2021 at the time this lawsuit is filed.

70. The continued occupancy of the Premises by Defendant Alboghdady and Defendant Joud during this extended period in which they have used the Premises as a hotel and have paid no rent to Plaintiff represents a wrongful exercise of ownership rights over the Premises.

71. Defendants wrongfully retain possession of the Premises and withhold it from Plaintiff.

72. Pursuant to D.C. Code § 16-1124 Plaintiff is entitled to the prompt ejectment of Defendants from its property.

## COUNT II – CIVIL EJECTMENT RECOVERY OF MESNE PROFITS AND DAMAGES
### (Mahmoud Alboghdady & Joud LLC)

73. Plaintiff re-states and re-alleges the foregoing paragraphs as if fully set forth herein.

74. Pursuant to D.C. Code § 16-1109, Plaintiff is entitled to the mesne profits received by the Defendants from the Premises or for the clear value and use of the property sued for, as well as damages for waste or injury that has occurred to the Premises.

75. The clear value and use of the property is represented by the Lease Agreement through which the Parties previously agreed upon an appropriate value for Defendants occupying the Premises.

76. This agreed upon clear value for the use of the property totals $1,042,749.74 as defined by the Lease Agreement, for which Defendants are liable to Plaintiff.

77. Plaintiff is aware that the Premises are currently in a state of disrepair. If Defendants are compelled to vacate the property at this time, there would be significant cleaning, maintenance, and repair work necessary to return the Premises to any semblance of its original condition.

78. Plaintiff seeks additional damages in an amount equal to any necessary cleaning, maintenance, and other restoration work required for the Premises in an amount to be proven at trial.

## COUNT III – CIVIL EJECTMENT RECOVERY OF FURNITURE
### (Mahmoud Alboghdady)

79. Plaintiff re-states and re-alleges the foregoing paragraphs as if fully set forth herein.

80. Pursuant to D.C. Code § 16-1110(1) Plaintiff, as landlord for Defendant Alboghdady, is entitled to damages for the furniture which he rented on the Premises to Defendant Alboghdady.

81. When renting the Premises to Defendant Alboghdady, Plaintiff provided all of the accompanying furniture, which Defendant Alboghdady has used to operate the Premises as a hotel.

82. Plaintiff is entitled to any damages which have occurred to the furniture it provided in the Premises as part of the rental, in an amount to be proven at trial.

### COUNT IV – CIVIL EJECTMENT RECOVERY OF ARREARS IN RENT
### (Mahmoud Alboghdady)

83. Plaintiff re-states and re-alleges the foregoing paragraphs as if fully set forth herein.

84. Pursuant to D.C. Code § 16-1110(2) Plaintiff, as landlord for Defendant Alboghdady, is entitled to damages for all arrears of rent due from Defendant Alboghdady for his occupation of the Premises.

85. To date Defendant Alboghdady owes Plaintiff $977,644.99 in rent and late fees which are in arrears. This figure is calculated in accordance with the District's moratorium on late fees, but Plaintiff reserves the right to challenge the validity and enforceability of that moratorium and thereby seek an additional $65,104.75 in late fees.

86. Defendant Alboghdady's security deposit has been used to offset some of those rental arrears, leaving $797,644.99 due, in addition to the $65,104.75 in late fees subject to the District of Columbia's moratorium, for which Defendant Alboghdady is liable to Plaintiff.

### COUNT V – CIVIL EJECTMENT RECOVERY OF DOUBLE RENT
### (Mahmoud Alboghdady)

87. Plaintiff re-states and re-alleges the foregoing paragraphs as if fully set forth herein.

88. Pursuant to D.C. Code § 16-1110(3) Plaintiff, as landlord to Defendant Alboghdady, is entitled to damages in the amount of double rent from the termination of the tenancy to the verdict for possession.

89. Under D.C. Code § 16-1124, the tenancy is considered terminated when Defendant continued occupying the Premises after being in arrears on rental payments for six months. Accordingly, Defendant Alboghdady owes double rent from October 2020 to the present since his last monthly payment was for February 2020.

90. As such, Defendant Alboghdady is liable to Plaintiff for additional rents totaling $353,536.00.

### COUNT VI – CIVIL EJECTMENT RECOVERY OF DAMAGES TO PREMISES
### (Mahmoud Alboghdady)

91. Plaintiff re-states and re-alleges the foregoing paragraphs as if fully set forth herein.

92. Pursuant to D.C. Code § 16-1110(4) Plaintiff, as landlord for Defendant Alboghdady, is entitled to damages for waste or injury to the Premises.

93. Plaintiff is aware that the Premises are currently in a state of disrepair. If Defendants are compelled to vacate the property at this time, there would be significant cleaning, maintenance, and restoration work necessary to return the Premises to any semblance of its original condition.

94. Plaintiff seeks additional damages in an amount equal to any necessary cleaning, maintenance, and other restoration work required for the Premises in an amount to be proven at trial.

### COUNT VII – BREACH OF CONTRACT
### (Mahmoud Alboghdady)

95. Plaintiff re-states and re-alleges the foregoing paragraphs as if fully set forth herein.

96. Plaintiff and Defendant entered into a valid and legally enforceable contract, the Lease Agreement, pursuant to which Plaintiff agreed to lease the Premises to Defendant for seven years at an agreed upon monthly rent that increased each year.

97. Pursuant to the Lease Agreement, Plaintiff provided the Premises for Defendant's sole use and enjoyment and upheld all of its contractual obligations.

98. Defendant materially breached the Lease Agreement by failing to pay Plaintiff rent from March 2020 through April 2021 and on.

99. Defendant materially breached the Lease Agreement by failing to pay required late fees for untimely rent payments from January 2015 through at least March 2020.

100. Plaintiff contends that, to the extent the District of Columbia moratorium on late fees is found to be unenforceable, Defendant additionally materially breached the Lease Agreement by failing to pay late fees for untimely rent payments from April 2020 through the present and continuing.

101. Defendant materially breached the Lease Agreement by failing to replenish his security deposit after it was validly used to offset his past due rent and fees.

102. Defendant materially breached the Lease Agreement by not maintaining the Premises in good condition and not undertaking to return the proper in its original condition.

103. Defendant materially breached the Lease Agreement by failing to maintain required insurance policies meant to protect both Parties.

104. As a result of Defendant's material breaches of the Lease Agreement, Plaintiff has incurred damages in the amount of $700,220.50 in overdue rent, $277,424.49 in overdue late fees, with an additional $65,104.75 in late fees that have been subject to the District of Columbia's moratorium, $180,000 in an unpaid security deposit, an amount of

physical damages to the Premises to be determined at trial, and the cost of annual insurance payments to be determined at trial.

### COUNT VIII – UNJUST ENRICHMENT
### (Mahmoud Alboghdady & Joud LLC)

105. Plaintiff re-states and re-alleges the foregoing paragraphs as if fully set forth herein.

106. Plaintiff conferred substantial benefits upon Defendants through the provision of its property for Defendants' use as a hotel.

107. Defendants have knowledge of the benefits conferred upon them by Plaintiff through their continued use of the Premises as a hotel during the period which Defendant Alboghdady's has failed to pay rent.

108. Plaintiff reasonably expected to be paid by Defendants for their utilization of the Premises in a business enterprise.

109. Defendants reasonably should have expected for Defendant Alboghdady to continue paying his rent and accompanying late fees throughout the period in which they operated a hotel at the Premises but failed to do so.

110. Defendants chose to increase their profits over the duration of the Lease Agreement rather than paying the contractually obligated rental payments and late fees.

111. Defendants further chose to increase their profits over the course of the lease rather than paying for the contractually obligated insurance policies for the Premises, to Plaintiff's detriment.

112. Retention of the benefits conferred by Plaintiff upon Defendants without payment of the amounts due and owing to Plaintiff would be inequitable and unjust.

**PRAYER FOR RELIEF**

**WHEREFORE**, in consideration of the foregoing, Plaintiff respectfully requests that this Court grant the following relief:

a) To immediately eject Defendant Alboghdady and Defendant Joud from the Premises and return it to Plaintiff;

b) To award an amount against Defendant Alboghdady and Defendant Joud equal to civil ejectment damages for the fair value for use of the Premises totaling $1,042,749.74 and any damages to the Premises;

c) To award an amount against Defendant Alboghdady equal to civil ejectment damages for any furniture conveyed with the Premises, rental payments in arrears at least equal to $797,644.99, double rent in the amount of at least $353,536.00, and damages to the Premises;

d) To determine that Defendant Alboghdady breached the Lease Agreement;

e) To enter final judgment in Plaintiff's favor and against Defendant Alboghdady for compensatory damages in an amount to be proven at trial, but in no event less than $977,644.99;

f) To determine that Defendant Alboghdady and Defendant Joud have been unjustly enriched in an amount to be proven at trial;

g) To enter final judgment in Plaintiff's favor and against Defendants for compensatory damages in an amount to be proven at trial, but in no event less than $977,644.99;

h) To award pre-judgment interest and post-judgment interest at the applicable rates, court costs, attorneys' fees, including any additional expenses and attorneys' fees for collection; and

i)  For such other and further relief as this Court may deem just and proper.

Dated: April 27, 2021                           Respectfully submitted,

                                                                   KALBIAN HAGERTY LLP

/s/ Haig V. Kalbian
Haig V. Kalbian [D.C. Bar # 400976]
D. Michelle Douglas [D.C. Bar # 503354]
Alexander Rogosa [D.C. Bar # 1044198]
888 17th Street NW, Suite 1200
Washington, D.C. 20006
Email: hkalbian@kalbianhagerty.com
Tel:   202-223-5600
Fax:   202-223-6625
*Counsel for Plaintiff*